# Commonwealth ex rel. Burns *versus* Handley et al.

1. Section 5 of Article V. of the Constitution, providing that whenever a county shall contain 40,000 inhabitants it shall constitute a separate judicial district, does not of itself constitute such county a judicial district, but merely indicates a certain basis upon which, in the proper manner, it may be declared such by the legislature.

2. The erection of new counties, and the designation of judicial, senatorial and legislative districts, are matters subject entirely to the control of the legislature, except so far as expressly restricted by the constitution.

3. The effect of the creation of a new county is to withdraw its territory from the judicial district to which it previously belonged; it is neither a separate district nor a part of any district; and in the absence of any constitutional restriction the legislature has a right, by virtue of its inherent powers, to provide for the establishment of courts of justice in it, either (1) by allowing the new county to remain within the district from which it was taken, (2) to attach it to another contiguous district or (3) to erect it into a new and separate judicial district.

4. The Act of March 13, 1879, P. L., 6, (supplementary to the "New County Act" of April 17, 1878, P. L., 17) provides that when a new county is erected under the provisions of the latter Act, which contains 40,000 inhabitants, it shall be declared by proclamation of the Governor to be a separate judicial district and numbered as such, and that the judges then commissioned in the old county shall in the manner provided, be assigned to their respective districts. The Act of June 11, 1879, P. L., 139, provides that when a new county erected under the Act of April 17, 1878, P. L., 17, shall be proclaimed a separate judicial district, the qualified electors thereof shall at the next general election . . . . . elect one person learned in the law to be judge of such district, &c. The 14th Article of the Schedule of the Constitution of 1874 provides that "The General Assembly shall at the next succeeding session after each decennial census, and not oftener, designate the several judicial districts as required by this Constitution."

*Held*, that the Acts of March 13, 1879, P. L., 6, and June 11, 1879, P. L., 139, are not in conflict with the letter or spirit of the restriction contained in the above article of the Schedule of the Constitution.

April 5, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ. PAXSON and GREEN, JJ., absent.

[Com'th ex rel. Burns *v.* Handley.]

In the Supreme Court of Pennsylvania.

This was a rule granted by this court upon the petition of Ira H. Burns, to show cause why a writ of mandamus should not be awarded to Hon. JOHN HANDLEY, President Judge and Hon. ALFRED HAND, Additional Law Judge of the 45th Judicial District commanding them to meet and hold a Court of Common Pleas in the County of Lackawanna, and to compute and certify the votes cast at the general election held November 6, 1883, for the petitioner Ira H. Burns for the office of Additional Law Judge of said district and to issue to him the proper certificate of his election to said office.

The petition set forth that by the Act of July 12, 1883, the county of Lackawanna was constituted the 45th judicial district and thereby entitled to have two law judges for the Court of Common Pleas; and that prior to said Act the county of Lackawanna formed a part of the 11th judicial district. Prior to the passage of this Act the respondent Handley had been duly commissioned as judge of the Court of Common Pleas of said County and after its passage President Judge of the 45th judicial district. Prior to the said Act of July 12, 1883, the respondent Hand had assumed the office of Additional Law Judge in Lackawanna County, claiming to have been elected thereto at an election held therein on November 4, 1879, in pursuance of a supplement to an Act entitled " an Act to provide for the division of counties of this commonwealth and the erection of new counties therefrom " approved March 13, 1879, and a further supplement thereto approved June 11, 1879, which Acts the petition alleged to be unconstitutional, and that after the passage of the Act of July 12, 1883, it was the right and duty of the electors of the 45th judicial district to elect a person learned in the law as Additional Law Judge at the general election held on November 6, 1883. That at this general election a large number of votes were cast for the petitioner for the office of Law Judge and were so counted and returned by the election officers, but that the respondent judges Handley and Hand who held a Court of Common Pleas of Lackawanna County on November 8, 1883, for the purpose of counting the votes cast at said election, refused to compute the vote cast for the petitioner and to issue to him a certificate of his election to the office of Additional Law Judge of the 45th judicial district. The petitioner prayed for a writ of mandamus as above, and the court granted this rule to show cause why such writ should not be issued.

The respondents made answer to the petition that the county of Lackawanna was erected on August 21, 1878, by proclamation of the Governor in pursuance of the Act of April 17, 1878 (P. L. 17), and that for the " time being," as provided in

§ 13 of said Act, the county of Lackawanna remained a part of the 11th judicial district (Luzerne county) of which Handley had been elected one of the judges on December 3, 1874, for ten years from January 1, 1875. By the census of 1870, it appeared that the population of Lackawanna county exceeded 40,000. That the respondent Hand was appointed additional law judge of said district on March 4, 1879, for the period ending January 1, 1880, to fill a vacancy occasioned by the resignation of W. H. Stanton. On March 13, 1879, (P. L. 6,) an Act was passed under which Lackawanna county was declared by proclamation of the Governor, recorded April 3, 1879, to be a separate judicial district and Judges Handley and Hand were assigned thereto. Upon November 4, 1879, a general election was held by virtue of the Act of June 11, 1879, (P. L. 139), at which the said Hand was elected as judge for ten years from January 1, 1880, and was duly commissioned as such. The respondents further made answer that at the general election held November 6, 1883, there was no vacancy in the office of judge of the said 45th district, and that there was no proclamation by the sheriff that such an election would be held, and that no formal nominations were made for the office: that there were some votes cast for the relator at said election numbering in all 4500, and that these votes were not entered upon the records of the court because in the judgment of the respondent they were not warranted by law.

The case was heard on petition and answer.

*James Watts Mercur* with whom was *Rufus E. Shapley*, for the relator. The election held on November 4, 1879, at which the respondent Hand claims to have been elected judge, was illegal and void so far as that office was concerned. Lackawanna county was, on the day when that election was held, but a part of the *Eleventh* Judicial District, and did not become a separate judicial district until the Act of August 7, 1883, constituting it the *Forty-fifth* Judicial District, went into effect. The fourteenth section of the schedule to the Constitution which declares that: " The General Assembly shall, at the next succeeding session after each decennial census, *and not oftener*, designate the several judicial districts as required by the Constitution," made it impossible for this newly created county to become a separate judicial district until after the next session of the legislature succeeding the decennial census of 1880.

This was expressly decided by this court in Commonwealth ex rel. Chase *v.* Harding, 6 Norris, 343 ; Commonwealth *v.* Gaige, 13 Norris, 193.

[Com'th ex rel. Burns v. Handley.]

Section 8 of the Judicial Apportionment Act of August 7, 1883, provided that in districts where there might be no president judge learned in the law or additional law judge assigned by that Act, the electors thereof should *at the next general election* elect such officers. It then clearly became the duty of the respondent to compute all the votes duly cast and returned for the relator at the general election of November, 6, 1883, and to certify the returns; and this was a purely ministerial duty: Act January 30, 1874 (P. L., 37); McCrary's Law of Election, §§ 81, 82, 84, 223; In re Election in Philadelphia, 11 W. N. C., 268; In re Election, 38 Leg. Int., 84; In re Brightly, 14 W. N. C., 208; In re Dambly, ibid, 209; Attorney General *v.* Barstow, 14 Wis., 749; Morgan *v.* Quackenbush, 22 Barb., 77; People *v.* Head, 25 Ill., 328; Thompson *v.* Ewing, 1 Brewster, 77; and the mandamus prayed for should therefore be awarded: Commonwealth ex rel. Parker *v.* Emminger, 24 P. F. S., 479. The voters had a right to take notice of the law although no proclamation was made by the sheriff: Commonwealth ex rel. Parker *v.* Emminger, *supra*; Cooley Constitutional Limitations, p. 603; McCrary Law of Elections, §§ 116-121, §§ 135-137; People *v.* Cowles, 13 N. Y., 350; People *v.* Brenham, 3 Cal., 477; State *v.* Jones, 19 Ind., 356; People *v.* Hartwell, 12 Mich., 523; State *v.* Orvis, 20 Wis., 235; State *v.* Goetze, 22 Wis., 363.

*Henry W. Palmer*, for the respondents.—There was no vacancy in the office. When Lackawanna County was erected under the Act of April 17, 1878, it contained a population far in excess of 40,000, the number provided by the Constitution. It was created a separate judicial district by the Act of March 13, 1879, and under these Acts Hand was elected judge. These Acts are not in conflict with § 14 of the Schedule of the Constitution, because that section refers to the general judicial apportionment of the state and does not prohibit the *creation* of a new judicial district. Its design was to secure permanency by prohibiting a *general* re-districting of the state oftener than once in ten years. The Constitution did not take away the inherent power of the legislature to create new counties at any time. This section could not take effect until after 1880, because till then no decennial census could be taken. In the interval the legislature was left free to form judicial districts. The title of a judge to his office cannot be collaterally questioned. His right can only be challenged by the Commonwealth: Commonwealth *v.* Walter, 2 Norris, 105. The writ of mandamus is never granted except when the right of the relator is clear: Commonwealth *v.* Canal Company, 2 P. & W., 519; Commonwealth *v.* Commissioners of

[Com'th ex rel. Burns v. Handley.]

Allegheny, 16 S. & R., 317; Commonwealth *v.* Commissioners of Philadelphia, 1 Wharton, 1; Commonwealth *v.* County Commissioners, 5 Rawle, 75. The votes should not be counted because no Act of Assembly authorized the people to hold an election in the 45th district in November, 1883. The apportionment Act of August 7, 1883 covers this district, and provides that such election shall take place at the general election next preceding the term of office of the additional law judges who have been previously elected or commissioned therein. Under this section judges are to be elected in this district at the general election preceding the expiration of the commissions of the judges now acting under authority of law for that district, viz., in 1884 and 1889.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

The fifth section of the fifth article of the Constitution provides, that " whenever a county shall contain forty thousand inhabitants, it shall constitute a separate judicial district, and shall elect one judge learned in the law." In Commonwealth ex rel. Chase *v.* Harding, 6 Norris, 343, it was decided that this provision, when a county attains that number of inhabitants, does not of itself constitute it a separate district; but simply indicates a certain basis upon which, at the proper time and in the proper manner, judicial districts may be declared by the legislature. This was the precise question settled in that case; that it was correctly decided we have no doubt, although we may not follow all that was there said in apparent support of the principle determined, as authority on the question here involved. The fact that a county contains forty thousand inhabitants determines its constitutional right to be made a separate district; but that fact must somehow be authoritatively ascertained in order that the right may be exercised, and under our system the means of ascertainment must, in some form, be provided by the General Assembly ; to decide otherwise would, as stated by the learned Chief Justice who delivered the opinion, lead to inextricable confusion and ruinous consequences.

The erection of new counties, and the designation of judicial, senatorial and legislative districts are, and always have been, regarded as proper matters of legislation, and, subject only to the expressed limitations imposed by the constitution, the legislature has undoubted power in the premises. By the seventh section of the third article of the constitution, no new county can be erected by local or special law. The only general law on the subject is the Act of 17th April, 1878, entitled " an Act to provide for the division of counties of this Common-

wealth, and the erection of new counties therefrom." The passage of this Act was an exercise of the general powers referred to. Under this Act it is provided that, upon the erection of a new county the judicial district, for the time being, shall remain unchanged, and that the judges of the several courts of the divided county shall meet and organize the courts thereof.

The new county of Lackawanna was erected under the provisions of this Act of 1878; the judicial district, in which its territory was formerly embraced, "remained unchanged," and the Judges of the courts of Luzerne county were, under the provisions of the Act, the Judges of the courts of Lackawanna county also; there was, therefore, no new district created, no vacancy to be filled, and Bently's appointment conferred no official authority. Thus Lackawanna county, although alleged to contain more than 40,000 inhabitants, was, by the statute, made part of the eleventh district, with like effect, as when the new county of Montour was made part of the eighth district in 1850, or the new county of Lawrence part of the seventeenth district in 1849.

In ex rel. Chase v. Harding, supra, we held that this provision of the Act of 1878, as a temporary expedient, was a constitutional exercise of legislative power, but we did not decide that this was the only remedy which the General Assembly might provide. General laws may yet be passed providing for the erection of new counties from parts of several counties, and in such cases, the provisions of the Act of 1878 would be altogether inappropriate.

By the amendatory general Act of 11th June, 1879, however, the legislature provided that whenever a new county, erected under the provisions of the Act of 1878, and its supplements, shall be proclaimed as a separate judicial district, the qualified electors thereof shall, at the next general election which shall occur more than three months after the date of the proclamation, in the form prescribed by law, elect one person, learned in the law, to be Judge of such district; who shall be commissioned by the Governor, and have all the powers, rights, emoluments and privileges of other Judges of the several counties of the Commonwealth. Under the provisions of this Act, Judge HAND was elected at the general election of 1879, was duly commissioned and qualified, and has been, and still is, exercising the functions of the judicial office. His title to that office depends upon the validity of the Act of June 11, 1879; if the legislature had power in 1879 to provide that new counties thus erected should constitute separate judicial districts, the title of Judge HAND is indisputable, and the claim of the relator to the same office may be disregarded.

[Com'th ex rel. Burns v. Handley.]

The relator's counsel say that the Act of 1879 is in conflict with the 14th article of the schedule of the Constitution, which is in the following words:

"The General Assembly shall, at the next succeeding session after each decennial census, and not oftener, designate the several judicial districts, as required by this Constitution."

This section belongs properly to the body of the Constitution; it is not, in any proper sense, a schedule provision; it was not.intended merely to bridge the space between the old and the new systems; it is an important member of the system itself. Its design is to provide for a designation of the several judicial districts throughout the Commonwealth at regular or periodic intervals of ten years, and to prohibit any further or other designation within these decennial periods. The arrangement of judicial districts, thus provided for, is a conclusive one; it cannot be afterwards disturbed or interfered with during the period for which it is declared. But this decennial designation is made with reference to the political divisions of the State as they exist at the time; the erection of a new county is an event exceptional and somewhat extraordinary in its nature; as it creates new relations it develops new duties, and raises new obligations. The power of the legislature, under certain conditions, to create new counties at any time is not taken away by the Constitution of 1874. The legal effect of the erection of a new county is to withdraw the territory comprising it from the judicial district to which it previously belonged; in the absence of any legislative provision, the new county is neither a separate district, nor a part of any district; and, as we cannot conceive of the existence of a county without a court, it follows that a contemporaneous provision of some sort, for the establishment of courts of justice, is an essential part of the Act creating a new county. Upon this subject, however, the Constitution is silent. It is, of course, not implied that the new county shall remain in the judicial district within which its territory was formerly embraced, as it may be constituted from portions of several districts, and it is nowhere provided that it shall be joined to a contiguous district. The erection of a new county involves a condition, respecting its courts, not expressly provided for, and this seeming repugnancy must, we think, be resolved through the general powers conferred upon the legislature.

We have not before us a question as to the effect of an Act of Assembly dividing a single judicial district into two judicial districts, within the decennial period; the case at bar involves simply the judicial status of a new municipal division, which the legislature had undoubted power to create, and which, being lawfully established, must somehow be provided for.

[Middleton *v.* Middleton.]

The Act of 1879 does not come either within the letter or the spirit and meaning of the restriction of the 14th section of the schedule; that Act does not provide for a designation of the several judicial districts at any other time than at the next succeeding session of each decennial census, nor does it interfere with, or disturb, the districts already designated; it provides simply for the judicial status of a new born municipality which, without that provision, would have no status whatever. In the absence of any constitutional provision or prohibition, the legislature, we apprehend, had full power in the premises, and in the exercise of that power might allow the new county to remain within the district from which it was taken, might attach it to another contiguous district, or erect it into a new and separate district, as the public interests seemed most to require.

If the Act of 1878, and the amendment of 11th June, 1879, are not in conflict with the 14th section of the schedule of the Constitution, it is conceded that the title of Judge HAND to the office of Judge of the Courts of Lackawanna County, is indisputable, and that no vacancy existed in that office to be filled at the election in 1883. The ballots cast for Ira H. Burns at the general election of 1883 were, therefore, without warrant or authority of law, and we can discover no useful purpose to be subserved in obliging the Judges of the Court of Common Pleas of Lackawanna County to compute them. We are, therefore, of opinion that the rule should be discharged.

And now, October 6, 1884, the rule to show cause why a writ of mandamus should not be awarded to JOHN HANDLEY, President Judge, and ALFRED HAND, Additional Law Judge of the 45th Judicial District, as prayed for, is discharged at the cost of the relator, and the writ of mandamus is refused.