# Lewis, Appellant, *v.* Lackawanna County.

*Constitutional law—Salary of county officers—Necessity for legislative action.*

Section 5 of article 14 of the constitution providing that " in counties containing over 150,000 inhabitants, all county officers shall be paid by salary," does not execute itself, nor does it furnish the courts with any means of executing it. It is a mandate to the legislature, but does not become effective until legislative action.

*Public officers—County officers—Salaries—Change in classification—Act of March* 31, 1876, *P. L.* 13—*Constitution, article* 14, *section* 5—*United States census.*

The United States census in its relevancy to state matters depends on the constitution and statutes of the state. In adopting it as the test, the courts will proceed upon the general principle that it affords the best evidence attainable of the necessary fact; and upon the same principle before the fact can become a part of the state law and be made the basis of action it must be established by competent evidence. It follows, therefore, that it is not the mere existence of the fact that must govern its application, but its legal and official ascertainment.

A county once having its status as to population settled, retains it, until it is legally and officially ascertained to have changed.

Where a person on November 6, 1900, was elected district attorney in a county which by the census of 1890 was under 150,000, in population, and by the census of 1900 over 150,000, in population, and it appears that the result of the census of 1900 was not made known in any official manner until after the election for district attorney, such person does not come under the provisions of the Act of March 31, 1876, which carried into effect section 5 of article 14 of the constitution, providing for salaries of county officers in counties with more than 150,000, inhabitants.

Argued May 28, 1901. Appeal, No. 184, Jan. T., 1901, by plaintiff, from judgment of Superior Court, Jan. T., 1902, No. 9, reversing judgment of C. P. Lackawanna Co., Jan. T., 1901, No. 771, in case of William R. Lewis v. Lackawanna County. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Appeal from Superior Court.

The facts as agreed upon by parties were as follows:

1. The plaintiff was duly elected district attorney of Lackawanna county on November 6, 1900, to serve for the term of three years from the first Monday of January, 1901, and entered upon the duties of his office on the said first Monday of January, 1901, being January 7, 1901.

2. Between January 7, 1901, and January 12, 1901, upon which day this suit was brought, plaintiff performed certain services as said district attorney, and if he is entitled to compensation by way of fees, under the Acts of Assembly of April 2, 1863, P. L. 249, and April 12, 1866, P. L. 103, regulating fees of the district attorney in Lackawanna county, then there was due and owing to him on the said January 12, 1901, when this suit was brought the sum of $120 for such services.

3. As ascertained by the census of 1890, the population of Lackawanna county was 142,088, and as ascertained by the census of 1900, the population of Lackawanna county was 193,831.

4. The census of 1900 was taken under the act of congress, which provides that the enumeration of the population shall be made as of June 1, 1900.

5. The population of Lackawanna county by the census of 1900, was first announced on November 19, 1900, in a press bulletin from the census bureau in the city of Washington, D. C.

6. The average annual compensation received by the district attorney of Lackawanna county for the past ten years has exceeded the sum of $5,000, and if it is decided that the plaintiff is by law only entitled to receive compensation fixed by the act of assembly of the commonwealth of Pennsylvania, entitled "An act to carry into effect section 5 of article 14 of the constitution," etc., approved March 31, 1876, P. L. 13, the salary prescribed by said act would be a diminution of the emoluments and compensation of the plaintiff, to which he would be entitled under the acts of assembly regulating the fees of the district attorney in Lackawanna county, above referred to, and which have always formed the basis of the compensation of the district attorney of Lackawanna county.

The court of common pleas entered judgment in favor of the plaintiff for $120, which judgment was reversed by the Superior Court and judgment entered for the defendant.

*Error assigned* was the judgment of the Superior Court.

*William Jessup Hand* and *John G. Johnson*, for appellant.—A county's classification when once fixed can only be changed by a subsequent official determination of the requisite population, and until such determination it remains in its former class : Luzerne County v. Glennon, 109 Pa. 564; Com. ex rel. v. Harding, 87 Pa. 343.

There is no virtue in the mere taking of a federal census, of itself, or in any regulations of an act of congress providing for the taking of a federal census, to repeal or put into effect state laws or change the classification of counties.

Where the federal census is expressly made the guide to determine classification, no retroactive force is given to the census when completed, although stated as of the day it was commenced: State v. Braskamp, 87 Iowa, 588.

Appellant's compensation as district attorney is fixed and determined by the laws in force as to Lackawanna county on November 6, 1900, the date of his election, and he is not affected by the salary act of 1876 coming into force as to Lackawanna county after said date, but its operation is held in abeyance as to him by article 3 of section 13, of the constitution: Apple v. Crawford County, 105 Pa. 300; Guldin v. Schuylkill County, 149 Pa. 210; Com. v. Comrey, 149 Pa. 216; Carlile v. Henderson, 17 Colo. 532; Comrs. of Converse County v. Burns, 29 Pac. Repr. 894; Endlich on Interpretation of Statutes, sec. 499.

*I. H. Burns* and *Henry A. Knapp,* of *Willard, Warren & Knapp,* with them *H. L. Taylor,* for appellee.—The salary act went into operation in Lackawanna county on June 1, 1900.

Questions raised by the transition of counties from one class to another have been before this court in the cases of Monroe v. County of Luzerne, 103 Pa. 278, Luzerne County v. Glennon, 109 Pa. 564, Rymer v. Luzerne County, 142 Pa. 108, Guldin v. Schuylkill County, 149 Pa. 210, and Commonwealth v. Comrey, 149 Pa. 216; and it is submitted that none of these cases can be fairly considered to in any way bear out the contention of the plaintiff, but all of them are decidedly favorable to the defendant's cause.

The courts will take judicial notice of the results of the United States census: Hawkins v. Thomas, 3 Ind. App. 409; State v. County Ct., 128 Mo. 427; Worchester Nat. Bank v. Cheney, 94 Ill. 430; C. & A. R. R. Co. v. Baldridge, 177 Ill. 233; People v. Williams, 64 Cal. 87; People v. Wong Wang, 92 Cal. 278.

The press bulletin may be used to inform the judge in the same manner that he could inform himself by a personal letter to the director of the census. For this purpose it will show the fact of which the court is bound to take judicial notice, and that the fact appears that the population of Lackawanna

county, not on November 19, but on June 1, 1900, was over 150,000 and less than 250,000.

Opinion by Mr. Justice Mitchell, October 11, 1901

Section 5 of article 14 of the constitution providing that "in counties containing over one hundred and fifty thousand inhabitants, all county officers shall be paid by salary," does not execute itself, nor does it furnish the courts with any means of executing it. It is a mandate to the legislature, but does not become effective until legislative action. In this respect it is in exactly the same position as section 5 of article 5, directing that every county containing 40,000 inhabitants shall constitute a separate judicial district, and section 12 of the same article directing that in Philadelphia there shall be established a magistrate's court for each 30,000 inhabitants. It has been expressly settled that neither of these sections executes itself nor can be enforced by the courts until legislative action : Com. ex rel. v. Harding, 87 Pa. 343 ; Comm. ex rel. v. Handley, 106 Pa. 245 ; Cahill's Petition, 110 Pa. 167.

The Act of March 31, 1876, P. L. 13, in obedience to section 5 of article 14 of the constitution provided for salaries of county officers in counties with more than 150,000 inhabitants, but unfortunately made no provision for determining the population in case of change or dispute. In the case of cities whose classification may be affected by change of population, it was provided by the Act of May 8, 1889, P. L. 133, that the population "according to the last preceding United States census, or any municipal census taken later" should be officially certified to the city councils by the governor, under the great seal of the commonwealth. It would have been desirable, and have saved much trouble if some similar provision had been included in the act of 1876. But in the absence of any legislative method, the courts in cases of dispute like the present must proceed upon the general principles of law, and for convenience, if not of necessity, must settle the questions involved by reference to the census. In Com. ex rel. v. Harding, 87 Pa. 343, already cited, it was held that the population of 40,000 entitling a county to constitute a separate judicial district, was to be ascertained by the preceding census. The court was guided to that standard somewhat by section 14 of the schedule of the

constitution which directs the legislature to designate the judicial districts "after each decennial census and not oftener." But independent of that section, Chief Justice AGNEW said, "The number of inhabitants in a county is an unknown fact, except as it may become known through the decennial census taken by the United States." And in Luzerne County v. Glennon, 109 Pa. 564, it was held that for the purpose of classification of counties under the salary acts, the census is the only test of population.

The census has no inherent force or application in the law of Pennsylvania. Its relevancy to state matters depends on the constitution and statutes of the state. In adopting it as the test, therefore, the courts proceed upon the general principle that it affords the best evidence attainable of the necessary fact. And upon the same principle, before the fact can become a part of the state law, and be made the basis of action it must be established by competent evidence. It follows therefore that it is not the mere existence of the fact that must govern its application, but its legal and official ascertainment.

This is so clear as a matter of legal reasoning that it does not require elaboration, but it may be well to add an illustration ab inconvenienti. The census established that from 1880 to 1900, the population of Lackawanna county increased at a steady rate of a little over 5,000 a year. In 1890 it was 142,088, and it is therefore "morally certain," as is said by appellee," that on June 1, 1892, Lackawanna county had more than 150,000 population." If the fact alone governed, then everything done in regard to official salaries, in the county, has been wrong for eight years, though nobody knew or could know it. Or still worse, suppose the question were not of fees but of a legal office. The Act of June 27, 1895, P. L. 403, abolishes in counties of more than 150,000 population, the office of county auditor and requires the election of a county controller. Is every act of county auditors in such counties to be held illegal and void, and the county without the only legal officer, during the interval? The difficulty cannot be solved by treating the auditors as officers de facto, for that principle does not apply where there is no such office in the law: Com. ex rel. v. Harding, 87 Pa. 343, 353.

But it is argued that as the census was taken as of June 1, 1900,

the fact must be taken to be established as of that date, without regard to when the result is made known.  This will not help the difficulty.  There is no retrospective force in the census act, nor was any such effect intended.  A date certain was necessary to insure correctness, uniformity, the avoidance of duplication, etc., and this is all that was intended.  But the argument only puts the inconvenience a little further off without lessening it.  The census was prescribed by the constitution as a basis for the apportionment of representatives in congress and required only an enumeration of the population, distinguishing free persons from all others, and excluding Indians not taxed.  But congress in the interests of legislation, science and general information has included in the census many other statistics.  Suppose the census of 1900 had been directed to report the population of the states by counties each year as of June 1, 1891 to June 1, 1900, we should have had the same difficulty already suggested.  The fact would appear officially that for eight years Lackawanna had been acting as of a class to which it had ceased to belong though the official ascertainment of the fact was not until now.  It is of general knowledge that the results of the census have not been promptly reached, that of 1880, not having been officially announced until 1883 and that of 1890, not until 1895.  On the argument of appellee everything dependent on the census would be kept in a state of suspension, or in danger of being turned topsy turvy, for an indefinite period.  The only escape from such intolerable inconvenience and confusion is by adherence to the logical principles of the law that the fact becomes applicable only from its legal ascertainment.

Though in none of the cases heretofore decided by this court has the time when the change of population becomes operative, in reference to the census, been directly considered, yet the principles of the decisions have been in harmony with the result now reached.  Thus in Com. ex rel. v. Harding, 87 Pa. 343, it is said, " There would arise perplexing questions of jurisdiction likewise if the fact of the required population determines the operation of the constitution, and not its legal ascertainment by an act of legislative power.  If the fact determines, then the time of the fact also governs, and who shall (outside of the legal mode) determine when this took place ? "  So in

Com. ex rel. v. Handley, 106 Pa. 245, CLARK, J., says, " The fact that a county contains 40,000 inhabitants determines its constitutional right to be made a separate district; but that fact must somehow be authoritatively ascertained in order that the right may be exercised." And in Luzerne County v. Glennon, 109 Pa. 564, it was held with great strictness on a case stated, that an agreement as to population argumentatively stated, would not be regarded, STERRETT, J., saying " The only legally recognized method of determining the population of. any particular county or district is by resorting to the last preceding decennial census. . . . In the light of existing legislation we have no doubt that for. the purposes of classification under the various salary acts, each county must remain in the class in which the last census found it until it is transferred to another class by a subsequent census."

The mode of compensation of the plaintiff under the constitution was fixed at the date of the election. A county once having its status settled, retains it until it is legally and officially ascertained to have changed. There was no such ascertainment until after the election. Even if the announcement in the press bulletin, referred to in the agreement of facts, could be considered as an ascertainment of the population, it was not made until after the election. But though it may have emanated from the census bureau, the press bulletin was not proof or even evidence. Newspaper bulletins are not evidence of anything. The question is not one of announcement, as the appellee has argued, nor of notice or knowledge on the part of the candidates or the electors. It is of the legal ascertainment of the fact. Under the Revised Statutes of the United States (1878) section 2196, the secretary of the interior is to lay the returns of the population before congress. This provision does not appear to be repeated in the census act of March 3, 1899, but nevertheless the census bureau submitted to congress on December 13, 1900, an official bulletin (No. 20) giving the population of the states by counties. But even that was a provisional statement, subject to correction on final report. In very close cases this feature might become important. Nevertheless as an official act of a department of the government, in connection with congress, this was probably part of the public history of which not only the courts but officers of election and electors

are bound to take notice.   But that is the earliest date at which the fact of population on which the status of Lackawanna county was to be changed, can be considered as legally ascertained in the present case.   It was then too late to affect any rights under the election of November 6 :  Guldin v. Schuylkill Co., 149 Pa. 210 ;  Com. ex rel. v. Comrey, 149 Pa. 216.

Section 30 of the census act of March 3, 1899, authorizes the director of the census on request, to furnish the governor of a state, or " the chief officer of any municipal government " with a copy of the returns of the  population of the territory within the jurisdiction of such officer.   It is probable that in reference to elections the sheriff would be deemed the chief officer of his county so far as to authorize him to procure the information, and that an official statement of the facts from such certificate in his proclamation for the election, would be treated as a legal ascertainment of the facts which would be binding on electors and elected.   This matter, however, is not raised in the present case.

The  judgment of the Superior Court is reversed and the judgment of the common pleas affirmed.