Frank Underwood *et al.*, Complainants, Appellees, *v.* Litton Hickman, Judge, *et al.*, Defendants, Appellants.

*(Nashville,* December Term, 1930.)

Opinion filed July 1, 1931.

CHARLES EMBRY and H. W. BURCH, for complainants and cross-defendants; W. C. CHERRY, W. B. MARR, LOWE WATKINS, HENRY C. LASSING and JACK NORMAN, for defendants and cross-defendants—appellees.

AUST, CORNELIUS & WADE and HORACE OSMENT, for defendant and cross-complainant Litton Hickman, Judge, etc.—appellant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By chapter 101, Acts of 1921, county officers in Tennessee were deprived of their fees and given salaries. The counties were classified on a population basis as follows:

"Counties having a population of 200,000 or more shall constitute counties of the first class.

"Counties having a population of 100,000 or more but less than 200,000 shall constitute counties of the second class.

"Counties having a population of less than 100,000 shall constitute counties of the third class.

"Provided, that the population of the several counties for the purpose of this Act shall be determined by the Federal Census of 1920, and by each succeeding Federal Census."

Davidson County fell within the second class, the salary of the County Court Clerk being fixed at $6,000. The population of Davidson County by the census of 1930 is 222,264, bringing it within the first class, which entitles the County Court Clerk to a salary of $7,500. The only question involved upon this appeal is the date that this

increase in salary becomes effective. The chancellor fixed the date as of April 1, 1930.

The census of 1930 was taken pursuant to chapter 28, Acts of Congress of 1929.

By section 1 it is provided that a census population shall be taken by the Director of the Census in the year 1930 and every ten years thereafter.

By section 2 it is provided: "The period of three years beginning the 1st day of January in the year 1930 and every tenth year thereafter shall be known as the decennial census period, and the reports upon the inquiries provided for in said section shall be completed within such period."

By section 6 it is provided that the census of the population shall be taken as of the 1st day of April, and it is made the duty of each enumerator to commence the enumeration of his district on the day following unless the Director of the Census in his discretion shall change the date of commencement of the enumeration in said district by reason of climatic or other conditions which would materially interfere with the proper conduct of the work; but in any event it shall be the duty of each enumerator to prepare the returns and forward same to the supervisor of his district within thirty days from the commencement of the enumeration.

By section 13 the Director of the Census is authorized to have printed by the Public Printer, in such editions as he may deem necessary, preliminary and other census bulletins, and final reports of the results of the several investigations authorized by this statute, and to publish and distribute said bulletins and reports.

By section 18 the Director of the Census is authorized at his discretion, upon the written request of the governor of any State or Territory or a court of record, to

furnish such governor or court of record with certified copies of so much of the population returns as may be requested, upon the payment of the actual cost of making such copies and one dollar additional for certification.

From the foregoing, it will be observed that the census shall be taken as of April 1st, that the Director is given three years to complete his report, but is authorized to make preliminary reports from time to time. No specific provision is made for publishing official reports, and the statute does not fix a definite date when the new census becomes effective. The only logical conclusion is that it becomes effective on April 1st, and such, in our opinion, was the intention of Congress. Should we adopt any other date, it would result in irregularity and nonuniformity. For example, two counties could be raised by the same census to another class; the population of one might be officially determined on July 1st and the other on October 1st, so that in the one county the clerk would begin drawing the increased salary three months before the clerk in the other county would be entitled to the additional compensation. Theoretically, at least, they are entitled to the same compensation, and to construe the law as contended by complainants would result in inequality and injustice.

We have been cited to but two cases dealing directly with this question, and both support our holding.

In *Lewis* v. *Lackawanna County,* 17 Pa. Super. Ct., 25, 29-30, 32, it appears that by the census of 1900 the population of Lackawanna County was 193,831, but by the census of 1890 the population was 142,088. By the Act of 1876 district attorneys in counties having a population of less than 250,000 and more than 150,000 received a salary of $4,000 per annum. District attorneys in counties of less than 150,000 were compensated by the fees of

office. Plaintiff, Lewis, was elected district county attorney on November 6, 1900, and assumed office January 7th following. Between that date and January 12, 1901, he earned fees amounting to $120, for which he sued. The census for 1900 was taken under an act of Congress, which provided that the census should be taken as of June 1st. The population of Lackawanna County by the census of 1900 was first announced in a bulletin from the census office on November 19, 1901. In holding that the county came within the Act of 1876, and denying the claim of Lewis to the fees sued for, the court said:

"In view of the law classifying counties for the purpose of fixing salaries of their officials, and of the interpretation put thereon by the Supreme Court in the cases above quoted, when does a county pass from one class to another, and what determines its transfer? Is it the fact of the existence of its population, as ascertained by the decennial census, or of the public announcement of such a fact? The act of Congress, providing for the census, enacts that the enumeration shall not only be made but shall be taken, by which we understand it to be determined or held, as of June 1. The Supreme Court says that the fact must govern, that is, the county remains in the class in which the last census found it, until it is transferred to another class by a subsequent census. The census is the enumeration of the population, not the announcement of the result. This must necessarily be so from a variety of considerations.

"The date, as of which the census is taken, must, for all purposes, be the only fixed date for determining the population, although the enumeration may not be made on that date. So important is the question that congress has said that the date shall be fixed as of June 1, of the year in which the census is taken, although the enumera-

tion may not be completed for days thereafter, and although a case can readily be imagined in which a recount might be desirable and necessary, and the announcement of the result delayed for months; but whenever taken or however ascertained, the fact shall be determined as of June 1. And why? Because, if it were not so, there would be endless confusion and uncertainty and no uniformity. There are perhaps six or more counties in Pennsylvania having a population less than 250,000 and exceeding 150,000, although all of them do not pass from the one class to the other under the present census. It is important, from every consideration, that there should be uniformity in regard to the salaries of the officers of these counties. If, however, the contention of the plaintiff prevails, the salaries of the officials of a portion of these counties might be regulated by the provisions of the act of 1876, and the remainder by the acts governing the emoluments of their officers passed prior thereto.

"The announcement of the fact is subject to many contingencies. A recount might be necessary. The person charged with the computation of the enumeration from the various districts of any given county might be temporarily incapacitated in the discharge of that duty. The county in question might be accidentally omitted from the announcement either in making up the list in the census office or in transmission to the public press. Any number of contingencies will readily suggest themselves which might necessarily delay the announcement. . . .

"Courts take judicial notice of the results of a census. See numerous authorities cited in Bouvier's Law Dictionary, Rawle's Revision, under the head of 'Census.' Of what is judicial notice to be taken? Of the fact as it exists surely and not of its announcement. When did the fact exist? The law says June 1, 1900, not November 19,

when the announcement was made through the newspapers. The absurdity of any other rule becomes apparent from a very slight consideration of the consequences. The final official publication of the census of the United States will contain the announcement of the population of the several counties of this commonwealth. Nothing therein contained will probably show the time at which the announcement of the ascertainment of the population thereof was made public. How could this court, for example, take judicial notice of the fact that the population of Lancaster county was announced as of one date, of Montgomery county as of another date, and of Lackawanna county as of a third date, supposing, of course, that the announcement of these several counties was made at different dates, which is entirely possible.

"From every consideration, it seems to us that the only reliable rule and the only safe practice is to determine the population of any given county or municipality. for any purpose for which it is necessary to determine it as of the date fixed by law for its determination, without reference to the time at which the announcement thereof, official or semiofficial, shall be made."

In *Etowah Light & Power Co.* v. *Yancey*, 197 Fed., 845, 847, it was insisted by demurrer that a certain act did not apply to McMinn County under the federal census because at the time plaintiff was incorporated (1910) the census for that year had not been certified by the Director of the Census. In denying this insistence, Judge SANFORD said: "I do not think this ground of demurrer is well taken. If in fact the federal census had been taken and under that census the provisions of the Act had become applicable to McMinn County, such applicability cannot be defeated by reason of the fact that the supervisor of the census had not sent a certificate of the population to

the clerk of the county court, there being nothing in the Act requiring such certificate as a condition of applicability."

Counsel for appellant rely on *Childers* v. *Duvall* (Ark.), 63 S. W., 803; *Holcomb* v. *Spikes* (Tex.), 232 S. W., 891; and *Wolfe* v. *Morehead,* 98 Minn., 113. In the foregoing cases the question here involved was not considered. It is true that in those cases it was held that the court could not take judicial notice of the result of a census until an official publication was made. The syllabus in the Arkansas case fairly states the principle announced in that and the other cases referred to, and is as follows:

Under Act Cong. March 3, 1899, directing the taking of a census, and authorizing the publication of preliminary bulletins at the request of the governor of any state, no official notice can be taken of the result of the census until the publication of such bulletin; and hence, where the electors of a county, proceeding on the assumption that the county contained more than 15,000 inhabitants, and acting under Const. Art. 7, sec. 19, providing that any county having a population greater than 15,000 as shown by the last federal census, shall elect a county clerk, proceeded to elect such clerk before the publication of any official bulletin, such election was void, and the appointee of the governor, named after the bulletin was issued, was entitled to the office."

The following cases seem to conflict with those just referred to, to-wit: *Lewis* v. *Lackawanna County, supra; People* v. *Wong Wang* (Cal.), 28 Pac., 271; *State* v. *Braskamp* (Ia.), 54 N. W., 532.

Without undertaking to choose between these apparently conflicting holdings, it is sufficient to say that, with the exception of the Pennsylvania case, the court was dealing with a rule of evidence, namely, at what time will

a court take judicial notice of the result of a census. In the instant cause we are not considering a question of evidence, but are determining a fact; that is, What was the population of Davidson County on April 1, 1930? There is no dispute as to this fact.

A father bequeaths to his son a sum of money to be paid to him when he is twenty-one years of age. That time arrives. It may take some time for the legatee to produce satisfactory evidence that he is of age, but that does not affect the fact that on a particular day he arrived at his majority. And so in the cause we are considering the fact is that on April 1, 1930, the population of Davidson County, according to the federal census of that year, was 222,274, notwithstanding evidence of the fact may not have been available for several months after April 1st.

While the question is not free from difficulty, we are of opinion that the authorities, as well as the justice of the situation and the spirit of the law, require the court to fix the effective date of the census as of April 1st. That was the conclusion reached by the chancellor, an ! his decree will be affirmed.