(No. 6983. March 14, 1942)

CITY OF TWIN FALLS, a Municipal Corporation and Body Politic and Corporate, within Twin Falls County, State of Idaho, upon and out of the Relationship of H. L. CANNON, Appellant, v. JOE KOEHLER, PAUL R. TABER, CARL E. RITCHEY, LIONEL A. DEAN and LEONARD F. AVANT, Respondents.

(123 Pac. (2d) 715)

Witham & Kinney, for Appellant.

Harry Benoit, for Respondents.

AILSHIE, J.—Twin Falls is a municipal corporation of the second class, operating under the "Commission Form of Government." (Chaps. 30 to 36, inclusive, Title 49, I. C. A.) Respondents, Taber and Avant, were elected in April, 1937, as city councilmen and began serving their respective four-year terms May 1, 1937. Respondents Dean and Ritchey, elected in April, 1939, began serving like terms May 1, 1939. Koehler, also a respondent, was elected mayor of the city April 25, 1939, and began his two-year term of office, May 1, 1939.

At the time of the election of the above named officials, the city of Twin Falls had a population of more than 7,000 and less than 10,000; as shown by the national 1930 census,—8,787. The statute (sec. 49-3210, I. C. A.), prescribing "Salaries of mayor and council," provides as follows:

"The total compensation of the mayor and councilmen shall be as follows:

In cities having, by the last preceding state or national census, a population of 2500 and less than 7000, the mayor's annual salary shall be $300.00 and each councilman's annual salary shall be $150.00.

In cities having, by such census, a population of 7000 and less than 10,000, the mayor's annual salary shall be $600.00, and the annual salary of each councilman shall be $450.00.

In cities having, by such census, a population of 10,000 and less than 15,000, the mayor's annual salary shall be $1200, and the annual salary of each councilman shall be $900.00. . . . .

Such salaries shall be payable in equal monthly installments: provided, that the above salaries may be increased or decreased at any time by means of the initiative power in this act conferred."

Without the initiative power being exercised, or any other action being taken, the mayor and members of the council filed their verified claims for salaries beginning with the month of May, 1940, claiming the salaries specified by statute for a city with a population of 10,000 and less than 15,000. Their claims were allowed and paid. Thereafter, demand in writing was made of the city officials, to return the increase of these payments to the city treasury. They refused to comply with the demand; whereupon, appellant, by and through H. L. Cannon, as realtor, instituted this action, to recover the money as illegally and unlawfully paid out of the treasury. From a judgment and decree dismissing the action, plaintiff has appealed.

The question with which we are confronted on this appeal is: Upon what date does the salary of mayor and councilman change or become fixed, under the provisions of the foregoing statute? (Sec. 49-3210, I. C. A.)

We take judicial notice of the requirement for, and the taking of, the Federal decennial census. (U. S. Const., Art. I, sec. 2; 13 U. S. C. A., chap. 4; Sec. 16-101, I. C. A., subd. 2; *State ex rel Graham v. Enking,* 59 Idaho 321, 343, 82 P. 2d 649, 658; *Ervin v. State* 119 Tex., Cr. R. 204, 44 S. W. 2d 380, 383.) We also take notice of the fact

that no official "state census" has been taken for the year 1940.

This reduces our inquiry to the simple question, as to the *date* on which the *"national census" for 1940 was taken or became effective.*

The Federal statute (Act of June 18, 1929, chap. 28, 46 Stat. 21), providing for the census of population for the year 1930 "and every ten years thereafter," (13 U. S. C. A., sec. 201) provides, inter alia: (13 U. S. C. A., chap. 4, sec. 206.)

"The census of the population and of agriculture required by sec. 201 of this title shall be taken as of the 1st day of April, and it shall be the duty of each enumerator to commence the enumeration of his district on the day following unless the Director of the Census in his discretion shall change the date of commencement of the enumeration in said district by reason of climatic or other conditions which would materially interfere with the proper conduct of the work; but in any event it shall be the duty of each enumerator to prepare the returns hereinbefore required to be made and to forward the same to the supervisor of his district within thirty days from the commencement of the enumeration of his district: *Provided,* that in any city having two thousand five hundred inhabitants or more under the preceding census the enumeration of the population shall be completed within two weeks from the commencement thereof."

The actual count and record of the population (16th Census) was required to begin on the 2d day of April, unless the director of the census changed the date; and, in any event, it was required that each enumerator prepare and make return to the district supervisor, "within thirty days from the commencement of the enumeration of his district"; and, in cities of population of 2500 or more, that it be completed "within two weeks from the commencement" of enumeration. The statute further provides that the census "shall be taken as of the 1st day of April." In other words, it was required that the enumerator count any person who was alive on the first day of April, although such person might be dead on the date of the actual count or enumeration.

 There does not seem to be any room for doubt, as to the intention of Congress to require the count or enumeration of the population, as the same actually existed as a fact on the *first day of April.* At the same time, Congress realized that the count could not be actually made and completed in one day; and, for that reason, deemed it necessary to specify the date "as of" which count should be made.

The contention, however, is made by appellant here that, notwithstanding the count was to be made as of April first, nevertheless, no proof could be made, or did become available, until December 10th, at which date, it is asserted, official publication of the result of the count or enumeration was made and filed.

There was a very cogent constitutional reason for Congress fixing a definite date. The Federal constitution, Art. 1, sec. 2, requires a decennial census, for the purpose of apportioning representatives to Congress from the several states. Certificate of population for these purposes must be made by the Director of the Census to the Secretary of Commerce and thence to the President, "within eight months from the beginning of the enumeration." (13 U. S. C. A., chap. 4, sec. 202.) Thus, the taking of the Federal census is a national institution, along with the election of representatives to Congress. The latter fact occurs on a day definite, but the official count is not in sometimes for many days; and the final declaration of the result is deferred until it can be officially declared. Everybody knows, however, that the election has occurred.

It is contended by appellant, that " 'the enumeration did not constitute the census in law; on the contrary, it was but a step in its creation.' " It seems to us that this contention is unsound and that it confuses the *existence* of a fact with the *proof* of the fact. In other words, as above pointed out, the census is taken for the purpose of ascertaining, as a matter of fact, how many people were in a given municipality or state on the *first day of April,* 1940. The ascertainment of that fact is a matter of procedure, which is prescribed by the Federal statute; and the proof of existence of the fact may be furnished by the enumeration records after they are made.

Difficulty or delay in obtaining proof of a fact does not preclude its existence and operation. (*Hull v. Cartin,* 61 Idaho 578, 589, 105 Pac. 2d 196.) There are a great many occurrences and transactions taking place in every day life, of which there is no record, official, or primary evidence available for many days or months afterward; and still the record, when made, affords evidence of what existed at the time of the happening of the event. That is true with reference to births and marriages and registration therefor. (Secs. 38-214 and 31-309, I. C. A.) It is true with reference to the assessment of property for purposes of taxation. The tax lien for the year attaches on the second Monday of January; the actual assessment of the property may not occur until as late as June of the same year, but the assessment must be made *as of the second Monday of January.* (Secs. 61-102 and 61-306, I. C. A.) Yet, when the record is made up, it is admissible in evidence in the courts. At the time the assessment was actually made by the assessor, there might have been a valuable building or structure on a tract of real estate, but it was not assessable unless it was in existence on the *Second Monday* of January preceding.

The state statute is silent as to the nature or character of proof necessary to establish the existence of the census facts, but does provide that the state courts may take judicial knowledge of "whatever is established by law" in relation thereto. (Sec. 16-101, I. C. A.; *State ex rel Graham v. Enking,* 59 Idaho 321, 343, 82 P. 2d 649). Moreover, the Federal statute (13 U. S. C. A. chap. 4, sec. 218) provides for the director of the census furnishing certificates of population on the request of the governor, or court of record, or, "in his discretion, to furnish to individuals such data from the population schedules as may be desired." The statute further provides that returns shall be forwarded "to the supervisor of his district within thirty days from the commencement of the enumeration." (Sec. 206, chap. 4 of 13 U. S. C. A.)

In the case at bar, the officers did not begin to draw their salaries, under the new schedule of salaries, until the first day of May, which was 30 days subsequent to the time from which the enumeration should date.

 Public officers and courts should not disclaim knowledge of what everybody else knows. (*Fisher v. Jansen,* 30 Ill. App. 91.) It is common knowledge that municipal officers, chambers of commerce, and local civic organizations are always watching closely the taking of the census; and that newspapers publish the result of the enumeration as soon as it is completed. It would be absurd for a court to say that there is no way of acquiring knowledge of the 1940 decennial census until the following December, or later, when the director of the census caused the official bulletin to be filed.

It is also contended by appellant, that sec. 49-1809, I. C. A., prohibits a change in salary of these officers during the term for which they were elected. That section provides:

"The emoluments of no officer whose election or appointment is required by this title shall increase or diminish during the term for which he shall have been elected or appointed; and no person who shall have resigned or vacated any office shall be eligible to the same during the time for which he was elected or appointed, when during the same time the emoluments have been increased."

 It is believed that this statute does not apply to salaries of elective officers under *commission form of government,* as provided for by sec. 49-3210, supra. In the first place, sec. 49-1809, originally incorporated in the general statute for organization of "Cities and Villages," was adopted and approved March 4, 1893, (1893 Sess. Laws, p. 97, sec. 75, at p. 120) long before we had any statute authorizing commission form of government. When the Annotated Code of 1932 was compiled, the compilers changed the word "chapter," contained in the *original statute,* to the word "title," as it appears in the present code, making the section, apparently, apply to *all municipalities* mentioned and provided for in *Title 49* of the present (1932) code; whereas, it was enacted "for the organization, government, and powers of cities and villages," only, as therein defined. The compilers of the annoted code could not change or amend the statute, as they found it, nor make it apply to any other form of

municipal government than that for which it was enacted. (*State v. Purcell*, 39 Idaho 642, 228 Pac. 796.)

■ There is a further and equally cogent reason why this section (49-1809, *supra*) does not apply to the case before us. The statute under consideration (49-3210, *supra*), fixing salaries of mayor and councilmen, was in force when these officers were elected to office, and fixed the salaries, specifically providing for a sliding scale of salaries dependent upon the results of the national census, provided such census raised or lowered the total population of the municipality above or below specified standards. In other words, the fixing of these salaries was legislative and self-operative, and in no way dependent upon the action or non-action of the city officials or any other officer.

It has been held that, when the *officers* caused the population census to be taken, they could not have their salaries advanced by reason of the result of such census; (*State v. Smith*, 149 Wash. 173, 270 Pac. 306), but this is not such a case. Neither is this a case where the statute provides that the effective date of the salary raise "shall be determined by the last certified, or certified and published official census." (*Broyles v. Mahaska County*, 213 Iowa 345, 239 N. W. 1, 2.)

Most of the adjudicated cases dealing with this subject, to which our attention has been called, are predicated on such dissimilar statutes or such a different state of facts from what we have before us, that a review or discussion of the cases would be of little benefit, in a written opinion, in the case at bar. Appellant cites and relies on (*Commonwealth v. Walter*, 274 Pa. 553, 118 Atl. 510; *Luzerne County v. Glennon*, 109 Penn. 564; *Wolfe v. City of Moorhead*, 98 Minn. 13, 107 N. W. 728; *Broyles v. Mahaska County, supra; Lewis v. Lackawanna County*, 200 Pa. 590, 50 Atl. 162; *State v. Linville*, 318 Mo. 698, 300 S. W. 1066; *State ex rel Cornell v. Smith*, 149 Wash. 173, 270, Pac. 306.) While respondents have cited us to the following cases: (*Underwood v. Hickman*, 162 Tenn. 689 39 S.W. 2d 1034; *Puterbaugh v. Wadham*, 162 Cal. 611, 123 Pac. 804; *People v. Wong Wang*, 92 Cal. 277, 28 Pac. 270; *Ervin v. State*, 119 Texas, Cr. R. 204, 44 S. W. 2d 380;

*Holcomb v. Spikes* (Texas), 232 S. W. 891; *State v. Braskamp,* 87 Iowa 588, 54 N. W. 532; *Board of Commrs. of Coal County v. Mathews,* 147 Okla. 296, 296 Pac. 481.)

The nearest parallel case that has been called to our attention is *Underwood v. Hickman, supra.* There the supreme court of Tennessee, after reviewing the statutes, both state and Federal, and many of the cases said:

"Without undertaking to choose between these apparently conflicting holdings, it is sufficient to say that, with the exception of the Pennsylvania case, the court was dealing with a rule of evidence; namely, at what time will a court take judicial notice of the result of a census? In the instant cause we are not considering a question of evidence, but are determining a fact; that is, What was the population of Davidson county on April 1, 1930? There is no dispute as to this fact.

"A father bequeaths to his son a sum of money to be paid to him when he is twenty-one years of age. That time arrives. It may take some time for the legatee to produce satisfactory evidence that he is of age, but that does not affect the fact that on a particular day he arrived at his majority. And so in the cause we are considering the fact is that on April 1, 1930, the population of Davidson county, according to the federal census of that year, was 222,274, notwithstanding evidence of the fact may not have been available for several months after April 1st." (162 Tenn. 689, 39 S. W. 2d 1036.)

We conclude that the judgment of the trial court should be affirmed, and it is so ordered. Costs to respondents.

Givens, C.J., Budge, Morgan and Holden, JJ., concur.