ERI E. VARBLE, Petitioner, v. THOMAS E. WHITECOTTON, Warden, MISSOURI STATE PENITENTIARY.—No. 39648.—190 S. W. (2d) 244.

Court en Banc, November 5, 1945.

*H. P. Lauf* and *W. C. Sanders* for petitioner.

*J. E. Taylor,* Attorney General, and *Gordon P. Weier,* Assistant Attorney General, for respondent.

*Michael W. O'Hern,* Prosecuting Attorney, and *Kaer P. Vanice, II,* Assistant Prosecuting Attorney, amici curiae.

DOUGLAS, J.—This is an original proceeding in habeas corpus. On October 15, 1930 a Jackson County grand jury returned three indictments against petitioner, two for murder in the first degree and one for assault to kill. On November 17 one hundred fifty-five petit jurors were impaneled by the Jackson County Circuit Court. From this group the required number were called for petitioner's trial on that date. On November 19 the jury returned a verdict finding petitioner guilty of murder in the first degree and assessing his. punishment as imprisonment for life. Although represented by counsel, no motion for new trial was filed. On December 1 he was sentenced in accordance with the verdict to the Missouri State Penitentiary for life from which he now seeks his release.

Petitioner's grounds for relief are that the petit jury which convicted him and the grand jury which indicted him were unlawfully selected in that the respective statutes under which the juries were selected were inapplicable in the case of the petit jury and un-constitutional in the case of the grand jury. These points are raised for the first time in this proceeding. They were not raised before, during or after trial in the original proceeding. No claim is made that petitioner did not have knowledge of the defects he now complains of or means of discovering such defects. No charge is now made that either jury, grand or petit, was unfair or prejudiced. The constitutional right of trial by a fair and impartial jury is not involved.

Petitioner's theory is that since the methods of selecting the petit and grand juries were under inapplicable and unlawful statutes the circuit court was deprived of jurisdiction to try petitioner and his

conviction was void. We rule the statutes in question were applicable and legal and the conviction valid.

Because of procedural bars it would be unnecessary to consider on the merits the charges against the juries. However, we deem it important to remove any doubts about the validity of such statutes so important in the proper administration of the criminal code.

The rule is well settled that habeas corpus ordinarily will not lie because of error or irregularities in drawing, summoning or impaneling the petit jury. It is also well settled both by statute and decision in this State that an objection or challenge to the array of petit jurors must be made before the jury is sworn where the grounds of objection are known or means of their ascertainment available. State v. Rouner, 333 Mo. 1236, 64 S. W. (2d) 916; State v. Perno (Mo.), 23 S. W. (2d) 87; State v. Garrett, 285 Mo. 279, 226 S. W. .4; Sec. 698 R. S. 1939. Because of the argument advanced which we will next refer to there can be no question of the knowledge or the means of ascertainment thereof on the part of petitioner or his counsel.

The petit jury was selected under Article 3 of Chapter 48 of R. S. 1929, now Article 4 of Chapter 5 of R. S. 1939. The article then was applicable to counties containing "according to the last preceding national census, not less than two hundred thousand inhabitants nor more than four hundred thousand inhabitants." Sec. 8794 R. S. 1929. On April 2, 1930 the fifteenth national decennial census was commenced, the enumeration to be taken as of April 1. On June 27 the Kansas City Star on its front page carried a news story released through the chamber of commerce that Kansas City by itself had exceeded a population of 405,000. On July 7 the Journal Post said the census supervisor for Kansas City predicted a population of approximately 401,000. On July 9 the Kansas City Star indicated a population of 476,121 for Jackson County. Other news articles up to July 23 said that the population of Jackson County should well exceed 400,000.

Consequently, petitioner argues, it was a fact established as of April 1 that Jackson County exceeded a population of 400,000 inhabitants and this fact was commonly known by July 23 so that Article 3 of Chapter 48 was at the latter date at least no longer applicable to Jackson County, and should not have been followed in selecting the jury for petitioner's trial on November 17.

Petitioner contends that the newspaper articles disseminated information common to all about the result of the 1930 census of Jackson County and that the court must take judicial notice of the census results as announced in the newspaper articles. On the other hand we find the earliest promulgation of the census office showing the population of Jackson County was 470,454 was issued on December 22, 1930 by the Bureau of the Census in the Population Bulletin, First Series, Missouri, Number and Distribution of Inhabitants.

There is no statutory provision, either Federal or State, which sets the time when the result of a census shall become official. In such a situation the general rule is that a census becomes official as of the date of its official publication. 14 C. J. S. Census, sec. 6. This court has always taken judicial notice of "the official records of the census" and we find no case where the fact of population has been proved by other means. State ex rel. Harris v. Herrmann, 75 Mo. 340; State ex rel. v. Wofford, 121 Mo. 61, 25 S. W. 851; State ex inf. v. Evans, 166 Mo. 347, 66 S. W. 355. In State ex rel. v. Ryan, 232 Mo. 77, 133 S. W. 8, a quo warranto to remove the jury commissioners of St. Joseph because the population fell below the applicable limit, the national census of 1910 "as officially promulgated" was the basis of the decision. And in Jerabek v. City of St. Joseph, 159 Mo. App. 505, 141 S. W. 456 which considered a motion to quash a panel selected by the above jury commissioners, the court of appeals in sustaining the motion pointed out the jury had been selected after "the federal census of 1910 was officially announced." To the same effect see Childers v. Duvall, 69 Ark. 336, 63 S. W. 802; Holcomb v. Spikes (Tex. Civ. App.), 232 S. W. 891; Lewis v. Lackawana County, 17 Pa. Super. 25; 200 Pa. 590, 50 A. 162. There are contrary rulings mainly in cases where the fact of population rather than its determination by the census controls. See Underwood v. Hickman, 162 Tenn. 689, 39 S. W. (2d) 1034; State ex rel. Jordan v. Dehart, 15 Wash. (2d) 551, 131 P. (2d) 156; City of Twin Falls v. Koehler, 63 Idaho 562, 123 P. (2d) 715; Forde v. Owens, 160 S. C. 168, 158 S. E. 147.

The application of the statute we are considering is governed by the official records of the census. The statute itself denotes this. According to its terms the mere fact of the population in and of itself does not determine the statute's relevancy. The determining factor is something more. It is the population as enumerated "according to the last preceding national census." Thus the operation of the statute is based on the record of the census. The record of the census furnishes the evidence under which the statute shall be operative. Dunne v. Kansas City Cable Ry. Co., 131 Mo. 1, 32 S. W. 641. This appears to us to be an added reason why the application of the statute to Jackson County could not change at least until the official record of the "last preceding census" was promulgated disclosing Jackson County had a population which was without the limits set by the statute. Even thereafter a de facto jury might properly function under certain circumstances but we need not determine such a question in this case.

Accordingly we rule the petit jury was selected and impaneled under a statute at the time validity applicable to Jackson County.

Petitioner next charges the grand jury which indicted him was selected under a statute which was unconstitutional. He claims

this violated his constitutional rights under Article 2, Section 12, Constitution 1875 (hereafter all references to the Constitution are to the Constitution of 1875) requiring prosecution by indictment of information, and Article 2, Section 30, requiring due process.

It must be conceded that the grand jury was convened on the order of a judge of a court having the power to try and determine felonies as required by Article 2, Section 28. Being impaneled under lawful authority it was a legal body. Only the method of selection is under attack. Ordinarily we do not consider such an objection in this type of proceeding because error or irregularity in drawing, summoning and impaneling a grand jury is not reviewable in habeas corpus. Furthermore, it is well settled in this State that a challenge to the drawing and organization of a grand jury must be made before it is sworn. Secs. 3903 and 3904, R. S. 1939; State ex rel. Graves v. Southern, 344 Mo. 14, 124 S. W. (2d) 1176; State v. Richetti, 342 Mo. 1015, 119 S. W. (2d) 330; State v. King, 342 Mo. 975, 119 S. W. (2d) 277; State v. Carolla, 316 Mo. 213, 292 S. W. 721.

Even though petitioner's objection to the grand jury will not ordinarily be considered in a habeas corpus proceeding because it is made too late we will determine it as we did his objection to the petit jury in order to obviate any confusion in proceeding under the statute assailed.

The grand jury that indicted petitioner was selected under the provisions of what is now Section 794 R. S. 1939. This section bore the number 6700 in the Revised Statutes of 1919. It then applied only to cities having a population of more than three hundred thousand inhabitants. At an extra session of the 51st General Assembly, Section 6700 was amended to make it applicable to both cities and counties. As thus amended it then became applicable to Jackson County. Petitioner's charge that such section is unconstitutional is based on the ground the General Assembly did not have the authority to amend it at an extra session because the subject matter of the amendment was not specially designated in the Governor's proclamation calling the extra session nor was it recommended by special message. Therefore, making the amendment violated Article 4, Section 55 of the Constitution. That section provides: "Sec. 55. Extra Sessions, power limited. The General Assembly shall have no power, when convened in extra session by the Governor, to act upon subjects other than those specially designated in the proclamation by which the session is called, or recommended by special message to its consideration by the Governor after it shall have been convened."

It is true that the proclamation did not designate the amendment as a subject for action. The copy of the Governor's special message found in the Senate Journal in paragraph 12 recommended an amendment to Section 6704, a different section on a different subject.

Senate Journal, 51st. General Assembly, Vol. 2, page 1224. However, the copy of the Governor's special message found in the House Journal, bearing the same date, identical in every other respect except as to paragraph 12, contained the following as said paragraph: "The subject of amending Section 6700, Revised Statutes of Missouri 1919, covering the selection of grand juries in cities of three hundred thousand or over so as to include also counties of three hundred thousand or over." House Journal, 51st. General Assembly, Vol. 2, p. 1557; and Appendix House and Senate Journals, 51st. General Assembly, Message of Governor Arthur M. Hyde to the 51st. General Assembly (extra session) p. 9. In response to the latter recommendation the Senate and the House each introduced separate bills to amend Section 6700 in the manner suggested and both bills were passed. S. B. 34, H. B. 47. Only the Senate bill is referred to in the Laws of 1921, p. 73.

What caused the confusion in paragraph 12 of the copies of the message as disclosed in the conflicting records of the House and Senate we do not know. But it was the Governor's evident intention to recommend amending Section 6700 and not 6704. He approved the act amending Section 6700. This was also the evident understanding of both houses. No bill was introduced to amend Section 6704. As we have pointed out, the Senate and the House each passed identical bills amending Section 6700.

Since every reasonable presumption is made in favor of the constitutionality of a statute we rely on the records which are most favorable to the validity of the statute. The copy of the message contained in the House Journal sustains the validity of the act. The copy of the message found in the Senate Journal would render the act invalid. Therefore, we disregard the entry in the Senate Journal. We hold that Section 6700 as amended, now Section 794, R. S. 1939 is valid. The court record shows substantial compliance with Section 794 in the selection of the grand jury.

Our writ of habeas corpus was improvidently issued. It is hereby quashed and petitioner is remanded to the custody of respondent Warden. All the judges concur except *Leedy, J.*, who concurs in the result only.