CITY OF NASHVILLE *v.* KIZER.

(*Nashville,* December Term, 1951.)

Opinion filed July 11, 1952.

Z. T. OSBORN, JR., and BENSON TRIMBLE, both of Nashville, for City of Nashville, appellant.

J. W. ANDERSON and E. K. MEACHAM, both of Chattanooga, amicus curiae, for City of Chattanooga.

Roy H. Beeler, Attorney General, and Allison B. Humphreys, Solicitor General, for appellee.

Frank B. Gianotti, Jr., and Charles M. Crump, both of Memphis, for City of Memphis, intervening defendant.

Mr. Justice Burnett delivered the opinion of the Court.

This suit was filed by the City of Nashville in its own behalf and in behalf of other municipalities similarly situated under the Declaratory Judgments Act of this State, Code, Section 8835 et seq., seeking a construction of a portion of the "Tennessee Retailer's Sales Tax Act", as contained in Chapter 3 of the Public Acts of 1947 and amendments thereto (carried in the Code under Section 1328.37).

The Chancellor found against the contention of the complainants and in favor of the contention of the appellees that the determinative date upon which allocations

should be made subsequent to April 1, 1950, was the date of April 1, 1950, which is the date that the Federal census is to be taken, and is the effective date of Federal census as construed by this Court in the case of *Underwood* v. *Hickman,* 162 Tenn. 689, 39 S. W. (2d) 1034, 1036. The complainants seasonably appealed, have assigned error and argument has been heard. We now have the matter for determination.

The pertinent portion of the Act, Code Sec. 1328.37, in question provides for the allocation of tax receipts and specifically provides that these receipts shall be allocated to the following "objects and purposes: 1. Twelve and one-half per cent is hereby appropriated to the several municipalities within the State of Tennessee to be allocated and distributed to them monthly by the director of accounts in proportion as the population of each municipality bears to the aggregate population of all municipalities within the state *according to the federal census of 1940 or any subsequent federal census;* municipalities with a population of 1,000 or more incorporated after May 1, 1951 shall be eligible for an allotment provided an accurate census of population has been certified to the state planning commission by the municipality; municipalities incorporated after the federal census of 1940 and prior to May 1, 1951, or which heretofore have qualified for participation in sales tax funds shall be entitled to continue to participate therein on the basis of their population as certified to the state planning commission until the announcement of the federal census of 1950 and thereafter that they be entitled to participate on the basis of their population under the federal census of 1950 and each subsequent federal census."

The case was heard on bill and answer.

The bill alleges that the defendant, Commissioner of Finance and Taxation, has taken the position that he is required by the Act to reallocate the cities' apportionments of the sales tax receipts as of April 1, 1950, and therefore, has advised the complainant the City of Nashville that it has been overpaid in excess of $100,000. And that as a result of this overpayment the Commissioner also advised the complainant that he would be required to withhold from said complainant sufficient payments to liquidate the alleged overpayment by June 30, 1952.

It is insisted that this action of the Commissioner in retroactively apportioning its share of receipts from the sales tax on the basis of the 1950 federal census from and after April 1, 1950, is unlawful. The complainant also contends that while in fact it was a municipal corporation when the federal census of 1940 was taken, it was rechartered and recreated by the General Assembly of Tennessee in the year 1947, and that as such municipal corporation it is entitled to participate on the basis of its population as of 1940, and as of its population when recreated in 1947, until at least the announcement of the result of the federal census of 1950.

Our examination and study of the section of the Act in question convinces us that municipalities which are to share in the tax are divided into three classes: (1) Municipalities incorporated prior to 1940 to which the federal census of 1940 or any subsequent federal census was made applicable: (2) Cities with a population of 1000 or more, incorporated after May 1, 1951; and (3) Cities incorporated after the federal census of 1940, and prior to May 1, 1951, which have qualified for participation in the tax on the basis of their population as certified to the State Planning Commission.

In argument in this Court the appellant concedes that it comes within the first class above enumerated. It is likewise substantially conceded in the argument here that the fact that the charter of the City of Nashville was amended or reenacted subsequent to the 1940 census that this does not affect the position of the complainant, the City of Nashville, as being classified in the first class. It is also conceded in argument that if the reasoning of this Court in *Underwood* v. *Hickman,* supra, is followed now by this Court that then the decree of the Chancellor is correct and that the appellant is out of court.

The Legislature in originally enacting this section provided for two classes of cities, the first being all those incorporated prior to 1940 as to which the 1940 or any subsequent Federal census was made applicable. The second class included those cities incorporated subsequent to "the latest Federal Census" which were made eligible if any accurate census of their population was certified to the State Planning Commission. By subsequent legislation, Section 1, Chapter 17 of the Public Acts of 1949, this provision was rewritten by striking certain language in the original Act after the italicized portion following the semicolon (above quoted), then placing the language that follows thereafter. This amendment did not affect the first class of cities under which the complainant comes but in place of the second class created by the original Act this amendment created two new classes.

By Section 1, Chapter 248 of the Public Acts of 1949 the date of March 1, 1949, as contained in the 1949 Act above referred to, was changed to August 1, 1949, and by Chapter 241 of the Public Acts of 1951 said date was further changed to May 1, 1951. The preamble to this last Act stated that the amendment was necessary to

provide sales tax distribution for cities incorporated after August 1, 1949 and prior to May 1, 1951, having less than 1,000 population. Thus these amendatory acts have placed the cities in the classification above enumerated as one, two and three.

The 1950 Federal census was taken as of April 1, 1950. 13 U. S. C. A. Section 206. This Court considering the identical Federal Act under which the 1950 Federal census was taken when construing that Act as applicable to salaries of the public officials in *Underwood* v. *Hickman,* supra, determined that the effective date of the Federal census was April 1 of the year in which the census was taken. We will not undertake in this opinion to review the Federal Act under which the Federal census is taken because it is thoroughly analyzed and reviewed in the opinion of *Underwood* v. *Hickman,* supra, and we could not elucidate on the matter any more than was done by this Court in that case.

In *Underwood* v. *Hickman,* supra, the question at issue was the effective date upon which the Davidson County Court Clerk should receive an increase of salary by reason of an increase in population of Davidson County thereby placing it in another class under our Anti-Fee Act, Chapter 101, Acts of 1921. The language of the Act in question in the Hickman case was: "that the population of the several counties for the purpose of this Act shall be determined by the Federal Census of 1920, and by each succeeding Federal Census." In determining the meaning of this language this Court held that the determinative date was April 1, 1930, the date upon which the Federal census for 1930 was taken. Excellent reasons were given, and very respectable authority quoted from in the Hickman case, as to why the effective date of the

Act was on the date that the Federal census was taken. It was pointed out in that opinion that the census is the enumeration of the population and not the announcement of the result. It was likewise pointed out, in the Hickman case, that this was a fact and that the law had established that the census would be as of a certain date, that is the date when it was taken April 1, and not when the announcement was made through the newspapers or otherwise as to what the census was. This was the date as fixed by law for its determination and this date was made without reference to the time of the announcement either official or unofficial.

Of course what the appellee did in this case was to make these monthly allocations to the cities under the 1940 population until he was advised by the Attorney General of the State that April 1, 1950 (the effective date of the Federal census) was the date the allocations of this sales tax money would have to be made to these cities under the provisions of the Act after the effective date of the 1950 Federal census. During this period, subsequent to April 1, 1950, some of the cities who had not increased in population and might have lost population were not entitled to the percentage of allocation under the 1950 Federal census that they were under the 1940 Federal census while other cities had increased in population and they were entitled to more under the 1950 Federal census. It was for this reason that there was a difference in the allocations, in other words, some cities had gotten more than their share under the 1950 and others had gotten less and therefore when it was determined by the 1950 Federal census as to what the population of these cities was it became necessary for the Commissioner to reallocate by taking from the cities who had been overpaid. This of

course is what brings forth all the argument that the money should not be allocated as of the effective date of the Federal census but as of the time when it is finally known what this census is. As is said in the *Hickman case,* supra, in construing the Federal Census Act, this might run for nearly three years after the effective date of the Federal Census Act.

Of course the first thing that the Court has to do in construing the Act in question is to determine what is the legislative intent. In determining this we read the Act and make a very careful study of it to determine what the intent of the legislature is primarily from the language of the statute which affords the best means of its exposition. We of course must give it the interpretation its language calls for, where this can be reasonably done. It is the general rule that no intent may be imputed to the legislature in the enactment of a statute other than such as supported by the face of the statute within itself. In thus trying to determine what the intent of the legislature is we read this Act down to the place of the semicolon where we have italicized a portion of the language of the Act. And to this point is where we clearly see that there is one class of cities meant as hereinbefore set out. By further study of the Act it seems to us that the remainder of the Act sets forth the other two classes that we have set forth above. When we thus divide the Act it seems that the intention of the legislature is clear. It certainly is clear from the Act that it was the intention of the legislature to make a determinative date as that fixed by the Federal census. As heretofore said this Court has definitely fixed that date in *Underwood* v. *Hickman,* supra. Had the fact of the population of the cities been intended to be the controlling thing of

the distribution there would have been no reason of why the legislature should have fixed the time of the Federal census as the pin-point time in the Act. Otherwise cities could daily change their population and there would be no certainty or nothing definite upon which the Commissioner could make these allocations. There is clearly nothing in the Act to show that the distribution should be made when any information or announcement of the census is made because as we know these things may vary from month to month or year to year over a period of some thirty-three months. The newspapers in one city may find out something out of Washington as to what the census of that city is and another may find a different one and therefore in this way the allocation of tax would be uncertain.

April 1st, of the year of the decennial period is the earliest date to which reallocation can be made. This is the most desirable date and the date the legislature clearly intended should be looked to. This is evident from the fact that sales taxes which go into the general fund of a city for general city services are increased in proportion to the population of the city as it is determined to be by the Federal census. The object of the census is to determine the population of the cities as of April 1, 1950. If the city's population is shown to have increased ten per cent as of this date it would be essentially unfair, and a denial of the obvious purpose of the statute, to say that though the condition existed on April 1, 1950, on account of which it is entitled to an increase, it will not get its increase until some much later date, because of the delay on the part of the Census Bureau Officials in making an announcement. If we look at the matter conversely it would seem that on April 1, 1950, a city on ac-

count of its population is not entitled to continue to receive the tax funds on the basis of which it received them under the 1940 census then it is essentially unfair to permit that city to continue to receive those funds until the Federal census officials see fit to make an announcement.

The identical question here involved has very recently been before the Supreme Court of Michigan in *City of Detroit* v. *Nims*, 1951, 330 Mich. 239, 47 N. W. (2d) 410. That Court resolved the question as did the Chancellor in this case. The case before the Michigan court was filed just a few days after April 1, 1950, seeking to mandamus the state officials to continue to pay the City of Detroit the funds there under the 1940 census. The Michigan court in determining the matter made a very thorough review of many cases from all over the United States including those as relied upon by the appellant herein. It is not necessary for us to review these cases or make any distinctions or comparisons with them with the present because we consider that as made by the Supreme Court of Michigan very ably done. We adopt what that Court has said in reference to these cases and as to the conclusions applicable herein. In reaching its determination the Michigan Court relied upon our case of *Underwood* v. *Hickman*, supra, and stated in the body of the opinion that the persons seeking mandamus in that case admitted that our case of *Underwood* v. *Hickman*, supra, was against them and in favor of the State's position. The Michigan Court among other things said:

"This course, it seems to us, will occasion no disturbance of the orderly processes of government nor any hardship other than such as may flow from a miscalculation of anticipated revenues, an eventuality fully as likely to occur under plaintiff's pro-

posed method of procedure. We hold that, for the purposes of this case, 1950 census figures must be given effect as of April 1, 1950.''

We think that the construction given this Act by the Commissioner and as found by the Chancellor results in the equality of treatment of the cities entitled to the sales tax funds. For the reasons stated above the decree of the Chancellor must be affirmed.