People of State of Illinois ex rel. George A. Trapp et al., Appellees, v. Joseph H. Tanner, President of Board of Trustees of Village of Evergreen Park, Louis Bruinius et al., Trustees of Village of Evergreen Park, Edwin W. Sack, Treasurer of Village of Evergreen Park, Alan L. Strand et al., Members of Board of Fire and Police Commissioners of Evergreen Park, Louis Riddering, and Village of Evergreen Park, Appellants.

Gen. No. 46,740.

First District, Second Division.

April 3, 1956.

Released for publication June 11, 1956.

Louis F. Cainkar, McKinley & Price, and Peter T. Appel, all of Chicago, for appellants.

Michael F. Ryan, of Chicago, for appellees; Richard F. McPartlin, Jr., of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order directing the issuance of a writ of mandamus requiring the defendants to reinstate relators to their positions as police officers of the village of Evergreen Park and entering judgment in favor of the relators for back salary in the sum of $3,472.53 each.

The three relators had held their positions for more than one year prior to March 17, 1954, the date on which a census was taken which subsequently showed that the village, having more than 13,000 inhabitants, was required to comply with the provisions of the Cities and Villages Act relating to civil service for

police and firemen. The employment of the relators was discontinued by the village on May 17, 1954. The issues presented to us are—were the relators protected in their tenure of employment as of March 17, 1954, and if so, are they entitled to back salary for the period of their ouster from office?

Under the Cities and Villages Act (Ill. Rev. Stat. 1955, Ch. 24, Article 14—1) a municipality which attains a population of 13,000 is required to put the act into effect and the mayor or president of the village board with the consent of the village trustees is re-required to appoint a board of fire and police commissioners. These commissioners are charged with the duty of enforcing the civil service requirements with respect to employment, hearing and discharge. Article 14–11 of the same act, called the blanketing provision, provides that no member of the fire or police department who has held that position for more than one year prior to the date the article becomes effective in the municipality shall be removed or discharged except for cause upon written charges and after an opportunity to be heard in his own defense.

At the request of the village a special federal census was taken March 17, 1954. The results showed a population of 15,746. These results were not published, however, until June 16, 1954. This, defendants contend, was the earliest day on which the act became effective in the village, and the tenure of any existing employment was not fixed until that date. Hence, say the defendants, employment having been discontinued May 17, 1954, the relators were not employed for more than one year prior to June 16, 1954 and were not covered by the act. On the other hand, relators contend that the application of the law is automatic; that is, it is mandatory upon any village which reaches a population of 13,000 to put the act in question into effect, and the census having established that on March 17, 1954 there were more than 13,000 people in the village, the act was

effective as of that date. While the law is automatic in that sense, there still remains the perplexing question as to when the officials of a village should be presumed to know that its population has reached the required point and when the blanketing provision becomes effective with reference to that knowledge. That is not simple even in a relatively small village with a rapidly increasing population, such as the one here involved.

For the purpose of solving the problems we have outlined, the legislature has enacted a law relating to census (Article 1-9 of the Cities and Villages Act, Ch. 24, Ill. Rev. Stat. 1955 [§ 1—9]), as follows:

"Whenever in this Act any provision thereof is upon the number of inhabitants, the number of inhabitants of the municipality shall be determined by reference to the latest census taken by authority of the United States or of this State, or of that municipality. It is the duty of the Secretary of State, upon the publication of any State or United States census, to certify to each municipality the number of inhabitants, as shown by that census. And the several courts in this state shall take judicial notice of the population of any municipality, as the population appears from the latest Federal, State or municipal census so taken."

Defendants argue from this that the result of the census could not be officially known to them until the Census Bureau had published its figures and issued its bulletin in June, 1954. They rely on two Illinois cases—People ex rel. Nicholson v. Board of Trustees of Police Pension Fund of Village of Hinsdale, 281 Ill. App. 394, 404, and Board of Trustees of Police Pension Fund of Glen Ellyn v. Village of Glen Ellyn, 337 Ill. App. 183.

In the Hinsdale case the relatrix sought to establish her right to a pension pursuant to a statute relating to villages having a population of not less than 5,000. To do so she was required to prove that the village had more than 5,000 inhabitants on January 5, 1926. She

158

produced experts who use the federal decennial censuses of 1910, 1920 and 1930 and other data and who estimated the average annual increase therefrom. They arrived at the conclusion that the population was more than 5,000 in 1926. The court held that this was not a proper method for determining population, saying that if a "statute does not prescribe by what method the population is to be determined, an official census is the only basis for the classification." The court concluded that the provision before quoted with respect to census (Article 1–9 Cities and Villages Act) *should be construed together with the statute* and that " 'the population to be determined by the United States Government statistics' means 'determined by reference to the latest census taken by authority of the United States.' (Town of Maysville v. Smith, 132 Ga. 316, 64 S. E. 131)." The court said it had found no case in which the exercise of governmental powers was dependent upon population where it was not held that the population was to be determined by an official census. Nor have we been able to find such a case. However, that principle is not applicable here because in the instant case we have a census establishing the population as of March 17, 1954, and the question is whether that date or the date of publication controls.

In the Glen Ellyn case, the village appealed from an order allowing the board of trustees of the police pension fund to recover judgments for money which the defendant had allegedly diverted from the fund for the years 1932 to 1945. The question presented was whether the village had a population of 5,000 in 1930. The evidence showed that a bulletin had been issued by the Bureau of Census December 24, 1930, in which the population of the village was fixed at 7,680. The defendant urged that this publication was of no legal significance on the ground that the Secretary of State had issued no certificate of population in 1930 as required by law and that such a certificate was a

159

condition precedent to the operating effect of the act. The court held against the defendant, saying there was nothing which established that act as a condition precedent to the effectiveness of the civil service statute. The court held that the village officials were under obligation to accept the federal decennial census as shown by its official publication to be 7,680. The court stated that when the official census publication was received the village officials were required "to establish a fund and provide for a board of trustees at the earliest possible date." Defendants in the instant case take comfort from that language as supporting their right to discharge the relators on May 17, 1954. We do not so view it. The establishment of a pension fund required the setting up of new administrative machinery and the performance of new duties. The case did not involve, as here, the preservation of existing relationships to conform to the purpose and spirit of the act.

The two Appellate Court cases just discussed appear to be the only authorities in Illinois on this question. However, there is a substantial amount of authority to be found in other jurisdictions. The cases divide themselves into two categories. Some hold that it is the date of enumeration which controls and that the census when published relates back to that date. Underwood v. Hickman, 162 Tenn. 689, 39 S.W.2d 1034 (1931); City of Twin Falls ex rel. Cannon v. Koehler, 63 Idaho 562, 123 P.2d 715 (1942); State ex rel. Jordan v. Dehart, 15 Wash. 551, 131 P.2d 156 (1941); and City of Detroit v. Nims, Com'r of Revenue, 330 Mich. 239, 47 N.W.2d 4 (1951). Some hold that the census is not valid until official publication. Varble v. Whitecotton, 354 Mo. 570, 190 S.W.2d 244 (1945); Lewis v. Lackawanna County, 200 Pa. 590, 50 A. 162 (1901); Wolfe v. City of Moorhead, 98 Minn. 113, 107 N. W. 728 (1906); Childers v. Duvall, 69 Ark. 336, 63 S. W. 802 (1901). The requirement of official publication has in some courts been fulfilled by the publication of a pre-

160

liminary bulletin such as appears to be commonly issued by the Federal Census Bureau, while others have held that the census is not effective until the final legal act of ascertainment and promulgation. For our purposes this last distinction is not relevant.

Of the cases in the first group (those which have taken the date of enumeration) City of Detroit v. Nims, Com'r of Revenue, supra, is the most enlightening and in many respects the most relevant. In that case the Michigan law provided for the apportionment of certain sales tax revenue among the counties on a per capita basis, the computation to be based on the latest state-wide federal census or any special federal county-wide census, whichever was later. The funds involved were those collected during the year 1950. The federal census of 1950 was taken as of April 1, 1950. A preliminary census bulletin was issued on August 1, 1950. Before that date the tax authorities distributed the tax on the basis of the 1940 federal census. After August 1, 1950, distribution was made on the basis of the preliminary 1950 census bulletin, and adjustments were made to compensate for overpayments and underpayments, based on the application of the 1950 census as of April 1, 1950. Thus, the question squarely presented to the court was whether or not April 1, 1950, the date the enumeration was taken, was the effective date for the application of the law. The court analyzed the various cases, most of which we have cited, and found them equally divided. The court said that where the jurisdiction of a court, the method of drawing juries, or the appointment or election of public officials is in issue courts have required absolute certainty and therefore have been inclined to hold that the population has not been established until the final legal act of ascertainment and publication. Where, however, such absolute certainty with respect to the issue involved is not demanded, a more fair and liberal interpretation of the statute may be applied. In the case before them

161

they held that the date of enumeration was controlling and that the Commissioner of Revenue had made a proper distribution when he based it upon the enumeration date, April 1, 1950, and made adjustments accordingly. The court explicitly stated that in arriving at this conclusion it was not undertaking to settle upon some definition which would be appropriate and controlling in all cases in which a census was involved. They said: "We emphatically do not decide in this case the meaning of terms employed in statutes not involved in this case." The inquiry must be, they said, what the people meant by the adoption of the statute involved, looking to the purposes and objects of that law, as well as the letter thereof.

■ Civil service was adopted to improve public service and particularly to eliminate political and religious prejudice and other bias in the selection of employees and to protect them against dismissal on grounds not related to the quality of their service. In order to avoid the confusion of a complete turn-over upon the adoption of civil service, it was provided that those who had been in office for one year prior to the time the act became effective should be protected by law in their tenure of employment. When on May 17, 1954 the relators were discharged, defendants knew that the village had a population of more than 13,000 and knew that a preliminary bulletin to be issued shortly thereafter would reveal the true population. They knew this because in April 1954 they had requested and received additional revenue for the village from the State Motor Fuel Tax Fund on the basis of a population in excess of 15,000 (Ill. Rev. Stat. 1953, Ch. 120, Sec. 424). At the same time the village assumed it was not bound to comply with the Civil Service Act until publication of an official announcement by the Census Bureau.

■ Article 14–17, Cities and Villages Act (Ill. Rev. Stat. 1955, Ch. 24 [§ 14—17]) is enlightening with respect to the legislature's intention in the application

162

of a blanketing provision such as the one in question. In it provision is made for the adoption of civil service in municipalities of less than 13,000. In such municipalities civil service may be adopted by a referendum, and it is explicitly provided that in such case the blanketing provision should apply within one year prior to the *adoption of the act*. The blanketing provision was not made to abide the establishment of a board of fire and police commissioners or other administrative machinery. Could village authorities, in the few days between the holding of a referendum on the adoption of civil service and publication of the results, dismiss employees who had held office for more than one year? The answer is obvious. We think the analogy is applicable to the instant case. It is our opinion that a fair interpretation of the act in question, read together with the provision of the act relating to census, is that the blanketing provision of Article 14–11 was in effect as of the date the enumeration was taken.

We now proceed to a consideration of the other issue. On March 31, 1955, the court orally announced its decision, which was adverse to defendants, but no order was entered. On April 6, it was stipulated by counsel that if any judgment were entered, it should not be mandamus, but a money judgment against the village. Thereupon counsel for the relators for the first time asked leave to make the village a party defendant, which was allowed. The village then filed an answer which adopted the pleadings of the other defendants and set up two additional defenses: first, that the duties of the relators had been performed by de facto officers and that moneys appropriated therefor by the village had been used to pay such de facto officers; and, secondly, that the relators had been employed elsewhere during the period of their ouster and had not been damaged by reason of nonpayment of salaries. The court refused to permit defendants to introduce evidence to sustain the allegations made in their an-

163

swer. They thereupon made an offer of proof, to which the court sustained an objection. Plaintiffs contend that the court exercised proper discretion in denying the village the right to present evidence at that stage of the proceedings. This is a case in which a municipality is involved, and with respect to municipalities courts do and should exercise a broader and more lenient discretion. Moreover, this was the first opportunity the village had to present its case, except insofar as it may be said to have been represented by the individual defendants. However, the judgment sought and rendered was against the village. It is questionable whether the court had any discretion with respect to the filing of the answer and the presentation of additional defenses immediately after the village was made a party. It could have rendered its judgment only on the conclusion that the defenses were legally insufficient, and that, from our reading of the record, is what was done. We must therefore consider whether these defenses are sound in law.

■■ In this court the village has relied only on the defense of payment to a de facto officer. The general rule is well-established in this state that payment to a de facto employee is a good defense to a suit for back salary by an ousted de jure employee. McKinley v. City of Chicago, 369 Ill. 268, 16 N.E.2d 727; Ryan v. City of Chicago, 369 Ill. 59, 15 N.E.2d 708; Hittell v. City of Chicago, 327 Ill. 443, 158 N. E. 683; People ex rel. Sartison v. Schmidt, 281 Ill. 211, 117 N. E. 1037; Bullis v. City of Chicago, 235 Ill. 472, 85 N. E. 614. The reason for the rule as stated in these cases is that public service requires a performance of these duties in the interest of the community, and to require public authorities to withhold the pay of a de facto incumbent at the peril of having to pay the same a second time would tend to impair efficiency. However, this rule has been modified. If a municipality persists in barring an ousted employee from his position after a judicial de-

termination in his favor, it is liable for his salary from the date of that adjudication and cannot defend on the ground that it has paid a de facto employee to perform the services during the period of ouster. Corbett v. City of Chicago, 391 Ill. 96, 62 N.E.2d 693.

The plaintiffs in the Corbett case after a hearing had February 24, 1941 obtained a writ of mandamus compelling their certification and appointment to positions as telephone operators (police clerks) in the classified civil service of the City of Chicago. An appeal was taken from this order and the judgment was affirmed in People ex rel. Corbett v. Allman, 312 Ill. App. 484, 38 N.E.2d 810. The Supreme Court on June 10, 1942, denied a petition for leave to appeal. On July 1, 1942 the appellees were employed by the City of Chicago pursuant to the original judgment in the mandamus proceeding. They then brought suit to recover their salaries from the city from February 24, 1941, the date of the original judgment in the mandamus proceeding, to July 1, 1942. From a judgment in their favor the defendant, City of Chicago, appealed. The court distinguished the McKinley case, supra, in that McKinley sought to recover salary for a period between the time of his election and the date he assumed office, while the plaintiffs in the Corbett case sought to recover only from the date on which the judgment in mandamus was first rendered, and their salaries were allowed only from the time of that judicial determination. The court in the Corbett case said that, as distinguished from the McKinley case, there had been a judicial determination by a court of competent jurisdiction after a full and complete hearing on the question, and ". . . the only uncertainty present was that in the minds of the city officials that the circuit court's judgment was wrong." The city contended that by this holding it was deprived of its right to appeal the judgment of the lower court. The court, however, said that upholding the contention of the city

165

"would be to permit administrative officials of a city to set aside at will for a considerable period, dependent upon the time consumed in an appeal, the determination of a court of competent jurisdiction." The case does not explicitly make good faith an element necessary to the application of the rule. The good faith appears, as we understand the Corbett case, to have been limited to the prosecution of an appeal. The legal question relating to the right of the village to discontinue the relators' employment was a matter of first impression in this state. While we find that the village was wrong, bad faith is not to be presumed from that finding. The court should permit the village to submit evidence of payment to de facto incumbents up to the time of the order for a writ of mandamus.

The order awarding the writ of mandamus is affirmed. The judgments entered for back salaries are reversed and the cause is remanded for further proceedings not inconsistent with the views herein set forth.

Order awarding writ of mandamus affirmed.

Judgments reversed and cause remanded.

McCORMICK, P. J. and ROBSON, J., concur.